IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  08-cv-00127-WYD-MEH

MARK BUBEN,

    Plaintiff,

v.

CITY OF LONE TREE;
LONETREE POLICE DEPARTMENT;
DWIGHT BERRY, Individually and in his Official Capacity as an Officer;
SCOTT CAVENAH, Individually and in his Official Capacity as Sergeant;
DAVID BROWN, Individually and in his Official Capacity as Commander; and
STEPHEN P. HASLER, Individually and in his Official Capacity as Chief of Police,

    Defendants.

_____

**ORDER**
_____

I.    <u>Background</u>

        THIS MATTER is before the court on Defendants' Combined Motion and

Memorandum Brief in Support of Partial Summary Judgment, filed October 16, 2009,

[ECF No. 53].

        In this action Plaintiff brings claims against the City of Lone Tree, the Lone Tree

Police Department ("LPD"), and various individual Defendants employed by the Lone

Tree Police Department.  Plaintiff asserts claims of excessive force, failure to train and

violation of due process pursuant to 42 U.S.C. § 1983, as well as claims for violations of

Title II of the Americans With Disability Act, 29 U.S.C. §§ 12131-12134 ("ADA"), and

Section 4 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act").

        Voluminous facts have been asserted by both parties in connection with the

summary judgment motion and briefing. I will briefly summarize those facts which I deem pertinent to my ruling. I have, however, construed all of the facts in the light most favorable to Plaintiff as I must for purposes of this summary judgment motion. *See Carolina Cas. Ins. Co. v. Yeates*, 533 F.3d 1202, 1204 (10th Cir. 2008).

On January 19, 2006, Lone Tree police Officer Dwight Berry and Sergeant Scott Cavenah were dispatched to the Crest Apartments to respond to a complaint of criminal mischief involving Plaintiff who was throwing items off of a third story balcony. The officers were informed that Plaintiff had broken the windows in the apartment and the glass door to the balcony, causing him to bleed profusely. Commander David Brown, who was also present at the scene, authorized forced entry into the apartment where Plaintiff was located. Upon entering the apartment, Berry and Cavenah observed Plaintiff, who was nude and covered with blood, standing outside on the balcony holding onto the railing. Plaintiff did not comply with commands to come into the apartment. Plaintiff contends that his failure to comply was due to his impaired mental state. In response to Plaintiff's non-compliance, Sergeant Cavenah deployed his TASER on Plaintiff and both officers attempted to grab him. The officers contend that as they reached towards him, Plaintiff turned toward Sergeant Cavenah with his fist raised and clenched, prompting Officer Berry to strike Plaintiff three times with his baton, while Sergeant Cavenah reactivated and then deployed his TASER a second time. The officers further contend that following the second TASER strike, Plaintiff pushed himself onto the railing of the balcony. The officers were unable to grab Plaintiff to bring him back onto the balcony and they contend that Plaintiff threw his arms above his head and "projected himself backwards off of the balcony." Plaintiff vigorously denies that he

pushed himself up on the balcony railing, and denies that he jumped off the balcony. While Plaintiff states that he has no recollection of the events of January 19, 2000, he notes that contemporaneous reports and recordings indicate that he fell off the balcony after the second TASER shot. Upon hitting the ground, Plaintiff attempted to stand. Commander Brown instruction Plaintiff to remain on the ground and directed officers Berry and Cavenah to handcuff him. Plaintiff maintains that he was not actively resisting the officers, rendering their use of force, including Sergeant Cavenah's use of the TASER, excessive and unconstitutional.

Following the incident, Cavenah, Berry and Brown met and discussed the incident. It is not clear from the record whether Defendants completed their individual incident reports before or after this meeting. While Defendants contend that it was standard practice to complete incident reports prior to the end of a shift, Plaintiff maintains that it was not standard practice for Defendants to meet and hold a "debriefing."

Lone Tree has no written policy specifically addressing the handling of mentally impaired individuals. The Colorado Association of Chiefs of Police (CACP) accreditation standards do not require this type of policy, and the CACP has accredited Lone Tree's policies. Lone Tree does have a written policy concerning TASER use. That policy does not contain a directive limiting TASER use to persons who are actively resistant, and permits TASER use on subjects who are non-compliant to verbal command. In addition, Lone Tree's policy does not include a specific admonition concerning deployment of a TASER on a subject in an elevated position. However, Lone Tree maintains that the TASER training provided to Lone Tree officers includes

discussion of this topic. All of Lone Tree's officers are to be re-certified in TASER use on an annual basis. It is undisputed that officers Berry and Cavenah received their initial certification on December 6, 2004, and were not re-certified until May of 2006.

II.    Analysis

In the instant motion, Defendants seek summary judgment as to Plaintiff's claims for violation of due process, failure to train and failure to adopt adequate policies, and violation of the ADA and the Rehabilitation Act. Defendants do not seek summary judgment as to Plaintiff's excessive force claim.

A.    Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56©.

The burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/ MS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party. *Anaya v. Crossroads Managed Care*

*Systems, Inc.*, 195 F.3d 584, 590 (10th Cir. 1999).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

      B.    <u>Due Process Claim</u>

As pled in the Amended Complaint, Plaintiff's second claim for relief alleges that Defendants Berry, Cavenah and Brown violated his due process rights by making false reports and statements in official proceedings in order to justify their unconstitutional use of force against Plaintiff.  Plaintiff contends that this conduct was done "intentionally and with deliberate indifference."  Plaintiff further alleges that Defendants Lone Tree, LPD and Hasler encouraged the individual Defendants' violations of Plaintiff's due process rights by "intentionally and with deliberate indifference encouraging the filing of false reports or by willfully or recklessly accepting and adopting said reports despite the inconsistencies and inaccuracies contained therein."  First Am. Compl. at ¶¶ 45-46, ECF No. 22.

Defendants assert that Plaintiff's due process claim should be dismissed as a matter of law because Plaintiff improperly pled this claim and even if properly pled, there is no case law to support a due process claim based on false reporting.  In response, Plaintiff asserts that Defendants "conspired to cover-up their illegal misdeeds to prevent [Plaintiff] from succeeding in a civil lawsuit," and that such conduct is actionable as a violation of due process under *Gonsalves v. City of New Bedford*, 939 F.Supp. 921, 925-28 & n.15 (D. Mass. 1996).  Brief in Opp'n to Mot. Summ. J. at 23, ECF No. 67.

As an initial matter, I reject Defendants' attempt to dismiss this claim based on the assertion that it was improperly pled.  Defendants have filed the instant motion

pursuant to Fed. R. Civ. P. 56, and the arguments raised herein will be analyzed in accordance with the standard of review applicable to motions for summary judgment. Defendants assertion that Plaintiff's second claim for relief should be dismissed because it fails to state a claim upon which relief can be granted should have been raised in a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6).

In order to prove a section 1983 conspiracy claim, a plaintiff must show that the defendants conspired to deprive him of a constitutional right or a federally protected right under color of state law. *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n. 6 (10th Cir. 1990). In addition to proving the conspiracy, plaintiff must also prove an actual deprivation of a constitutional right. *Id.* at 1449; *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990).

Plaintiff asserts that Defendants are not entitled to summary judgment on his due process conspiracy claim because he has not yet had an opportunity to prove the "underlying constitutional deprivations accompanying the conspiracy claim." Brief in Opp'n to Mot. Summ. J. at 25, ECF No. 67. According to Plaintiff, he has alleged a number of constitutional deprivations to "accompany" his due process claim, including violations of his right under the Fourth and Fourteenth Amendments to be free from excessive and unjustified force. Brief in Opp'n to Mot. Summ. J. 24, ECF No. 67. However, Plaintiff has not alleged that Defendants conspired to use excessive force. Rather, Plaintiff has alleged that Defendants engaged in an after-the-fact attempt to cover-up an alleged violation of excessive force by altering police reports to reflect that Plaintiff "jumped" from the third floor balcony, rather than "fell." Brief in Opp'n to Mot. Summ. J. at 25, ECF No. 67. Therefore, the constitutional violation that accompanies

Plaintiff's conspiracy claim is a violation of his due process right to access to the courts. *See Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983) (finding that the First and Fourteenth Amendments to the U.S. Constitution guarantee the right to seek legal relief for asserted injuries that have a reasonable basis in fact and in law); *see also Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984) (same).

Defendants maintain that Plaintiff's conspiracy claim must fail because he has no direct or circumstantial evidence of a conspiracy, and because Plaintiff has not proffered any evidence that Defendants kept from him in an effort to prevent his success in a civil lawsuit. Here, Plaintiff's evidence of a conspiracy includes allegations that during the incident officers reported that Plaintiff "fell" off of the balcony, and after a meeting later that day, the officers changed their story and reported that Plaintiff "jumped." According to Plaintiff, this meeting was a perfect opportunity for Defendants to engage in "revisionist history."

Frequently, a conspiracy must be proven with circumstantial evidence because "'[r]arely . . . will there be direct evidence of an express agreement among all the conspirators to conspire.'" *Snell*, 920 F.2d at 702 (quoting *Bell v. City of Milwaukee*, 746 F.2d 1205, 1260 (7th Cir. 1984)). Moreover, a plaintiff need not prove that each participant in the conspiracy knew the "'exact limits of the illegal plan.'" *Id.* (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979)).

However, even assuming that Plaintiff has sufficiently pled a conspiracy, I find that he has failed to demonstrate that the alleged conspiracy violated his constitutional right to due process in the form of access the courts. Here, Plaintiff has access to the evidence necessary to purse his case, including evidence that he "fell" from the balcony.

While Defendants may now contend that Plaintiff "projected himself backwards off of the balcony," Plaintiff will have the opportunity to present evidence that these contentions may be inconsistent with statements Defendants made during the course of the incident. Thus, Plaintiff has not demonstrated that he has been prevented from pursuing this action or that Defendants' actions somehow reduced the value of his claim. *See Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1996) (police cover-up which neither prevented plaintiffs from pursuing their tort action or reduced the value of their claims was not actionable under section 1983). Therefore, I grant summary judgment in favor of Defendants as to Plaintiff's Second Claim for Relief for violation of Due Process.

        C.    <u>Municipal Liability - Failure to Train</u>

The Supreme Court held in *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 689-90 (1978), that municipalities and other local governmental bodies are "persons" within the meaning of 42 U.S.C. § 1983. To establish municipal liability, a plaintiff must show: (1) the existence of a municipal policy or custom and (2) a direct causal link between the policy or custom and the injury alleged. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "Locating a 'policy' ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Board of County Com'rs. of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403-04 (1997).

When the claim is a failure to act, the plaintiff must demonstrate the municipality's inaction was the result of "'deliberate indifference' to the rights of its

inhabitants." *Id.* at 389. This standard is met "when the municipality has actual or constructive notice that its action or failure is substantially certain to result in a constitutional violation, and it consciously and deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999). Such notice is rarely demonstrated by a single incident of constitutionally deficient action or inaction. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). However, deliberate indifference may be found absent a pattern of unconstitutional behavior in a narrow range of circumstances if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations. *Barney*, 143 F.3d at 1307-08; *see also Allen v. Muskogee*, 119 F.3d 837, 842 (10th Cir. 1997). The failure to adopt a policy rises to the level of deliberate indifference "when it is obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights." *Rhyne v. Henderson County*, 973 F.2d 386, 391 (5th Cir. 1992) (citing *City of Canton*, 489 U.S. at 389)).

Here, the First Amended Complaint does not allege a ongoing pattern of misconduct, but focuses solely on the incident involving Plaintiff. Therefore, for Plaintiff's claim that the City of Lone Tree promulgated a constitutionally deficient policy with regard to TASER use, he must demonstrate that the facts of this case fall within the narrow range of circumstances justifying a finding of deliberate indifference absent a pattern of violations.

Plaintiff contends that Lone Tree, Defendant Hasler and Defendant Brown failed

to adequately train or supervise their officers or to adopt adequate policies and procedures regarding (1) the use of TASERS and (2) the handling of situations involving individuals impaired by psychiatric or other mental illness.  Plaintiff contends that Lone Tree's written policy regarding TASER use is inadequate in that (1) it does not prohibit the use of TASERS against passively resisting subjects and (2) it does not prohibit the use of TASERS against a subject who is on an elevated surface.  Plaintiff notes that warnings against the use of TASERS in these circumstances were clearly set forth in the TASER International training CD provided to Lone Tree.

In order to establish municipal liability for inadequate training on the use of force, Plaintiff must demonstrate:

> (1) the Deputies exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city towards persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Myers v. Oklahoma County Bd. of County Com'rs*, 151 F.3d 1313, 1318 (10th Cir 1998).

I find that Plaintiff has created disputed issues of fact as to all of these elements. First, Defendants concede that there are material issues of fact as to whether their actions exceed constitutional limitations on the use of force.  As to the second factor, Plaintiff has come forward with a witness it will seek to qualify as an expert in police policies and procedures who will state that "[e]ncountering persons with abnormal mental conditions is a usual and recurring situation for police officers," and that Lone Tree should have trained its police officers on how to deal with mentally ill persons.

-10-

Similarly, there are disputed issues of fact as to whether the failure to train officers in specific skill needed to handle recurring situations - i.e. skills for interacting with mentally ill person and skills regarding the use of TASERS on individuals on elevated surfaces, or who are passively resisting - presented an obvious potential for constitutional violations rising to the level of deliberate indifference. *Barney*, 143 F.3d at 1307-08. It is undisputed that Lone Tree does not have a written policy specifically addressing the handling of mentally impaired individuals. It is also undisputed that Lone Tree's TASER policy does not contain a directive limiting TASER use to persons who are actively resistant, or a specific admonition concerning deployment of a TASER on a subject on an elevated surface. Plaintiff maintains that policies adopted by the International Association of Chiefs of Police ("IACP"), the Police Executive Research Forum ("PERF"), and numerous police departments prohibit use of a TASER on a passively resistant subject and individuals on an elevated surface. In addition, there are disputes as to whether Lone Tree provided adequate training in these areas. Sergeant Cavenah and Officer Berry testified that they could not recall specific training regarding dealing with mentally impaired individuals. In addition, Plaintiff has raised an issue of fact as to whether Sergeant Cavenah and Officer Berry were re-certified in TASER use at the time of the incident. Construing the facts in the light most favorable to Plaintiff, Lone Tree's failure to address these issues in a written policy or in its training may reasonably be seen by a jury as deliberate indifference to a foreseeable need.

Finally, it is clear that the alleged constitutional violations are directly related to the allegations of inadequate training. Construing the facts in the light most favorable to Plaintiff, Defendants would not have needed to deploy their TASERS if they had other

skills at their disposal, and they would not have disregarded the danger of deploying a TASER on an individual on an elevated surface.

Because Plaintiff has demonstrated the existence of disputed issues of material fact, I find that summary judgment is inappropriate as to Plaintiff's Third Claim for Relief against Defendants Lone Tree and LPD for failure to train.

D.    Personal Participation / Qualified Immunity

Defendants next contend that Plaintiff has no viable claims against Defendant Hasler, who is the Lone Tree Chief of Police, or Commander Brown.

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.  *Harlow* places a presumption in favor of immunity of public officials acting in their individual  capacities. *Schalk v. Gallemore*, 906 F.2d 491 (10th Cir. 1990).  Once the defense is raised by a defendant, the burden shifts to the plaintiff to come forward with facts or allegations sufficient to show both "'that the defendant's actions violated a constitutional or statutory right'" and that the right "was clearly established at the time of the defendant's unlawful conduct."  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting *Albright v. Rodriguez*, 51 F.3d 15531, 1534 (10th Cir 1995)).  The Supreme Court recently discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then whether that right was clearly established at the time of the alleged violation.  *Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 816-22 (2009).  Under *Pearson*, courts have discretion to

decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Massey v. Wilson*, 484 F.Supp. 1332, 1333 (D. Colo. 1980). Defendants cannot be held liable by virtue of their supervisory position on a theory of respondeat superior. *Ruark v. Solano*, 928 F.2d 947 (10th Cir. 1991); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). To establish personal participation, a plaintiff must show that each defendant's caused the deprivation of federal right. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, or control or direction, or failure to supervise. *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). Thus, a defendant may not be found liable merely because of his or her supervisory position. *See Kite v. Kelley*, 546 F.2d 334, 336-38 (10th Cir. 1976).

1.     Chief Hasler

It is undisputed that Defendant Hasler, who is Chief of Police, was not present at the scene of the incident, and had no contemporaneous knowledge of the incident until after its completion. It is clear that Chief Hasler had no personal participation in the allegations of excessive force. However, Plaintiff contends that Chief Hasler is personally responsible for the training of Cavenah and Berry, and that their lack of training resulted in their unconstitutional use of force against Plaintiff.

Plaintiff has come forward with general facts demonstrating that Chief Hasler was

responsible for and supervised training within the Lone Tree Police Department. As discussed above, Plaintiff has alleged facts sufficient to demonstrate that Lone Tree and LPD may be liable for Chief Hasler's failure to train and supervise. However, failure to train is a theory to attach liability to a local government, and is not a basis for individual liability. *City of Canton, supra*, 489 U.S. at 389. I find that Plaintiff has failed to come forward with allegations sufficient to demonstrate personal participation by Chief Hasler in any violation of Plaintiff's federal rights. Therefore, I find that summary judgment shall enter in favor of Defendant Hasler on Plaintiff's Third Claim for Relief.

> 2.    Commander Brown

Commander Brown was present at the scene and authorized forced entry into the apartment, but contends he did not issue further orders or directives to Sergeant Cavenah or Officer Berry. Commander Brown next encountered Plaintiff after he fell off the balcony when he directed the other officers to handcuff Plaintiff. Although it is a close call, I find that Plaintiff has raised disputed issues of material fact as to whether Commander Brown was responsible for failing to intervene and prevent the alleged excessive force by Defendants Berry and Cavenah. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1164 (10th Cir. 2008). Under certain circumstances, supervisors may be liable for a subordinate's constitutional deprivations. *Id.* While section 1983 does not recognize the concept of supervisor liability, in situations where an affirmative link exists between the constitutional deprivation and the supervisor's personal participation, the supervisor may be personally liable. *Butler, supra,* 992 F.2d at 1055. Construing the facts in the light most favorable to Plaintiff, even though Commander Brown may not have directed Berry and Cavenah to deploy their TASERS, he heard them deploy their

TASERS after Plaintiff failed to respond to verbal commands, and observed Cavenah point his TASER at Plaintiff while he was standing at the balcony railing. I find these factual allegations sufficient to raise a dispute as to whether Commander Brown bears responsibility for the constitutional violations that occurred. *See Fogarty, supra.*

In addition, I find that Plaintiff's right to be free from excessive force was clearly established in this case. Typically, for a rule to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). It is clearly established that individuals have a Fourth Amendment right to be free from excessive force during arrest. *Graham v. Connor*, 490 U.S. 386, 394 (1989). However, the Tenth Circuit has recognized that "because excessive force jurisprudence requires an all-things-considered inquiry with 'careful attention to the facts and circumstances of each particular case', there will almost never be a previously published opinion involving exactly the same circumstances." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10 Cir. 2007) (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Moreover, officials can still be on notice that their conduct violates established law even in novel factual circumstances. *Casey*, 509 F.3d at 1284. Thus, the Tenth Circuit has established a sliding scale to determine when law is clearly established, and the "more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id.* (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)). When a officer's violation of the Fourth Amendment is particularly clear under *Graham, supra*, there is no

requirement of a second decision with greater specificity to clearly establish law. *Id.*

Here, I find that Plaintiff's has asserted a Fourth Amendment violation that is particularly clear. Plaintiff contends that, based on his failure to respond to verbal commands, Officer Berry struck him three times with his baton, and Sergeant Cavenah deployed his TASER two times. Plaintiff alleges that the second TASER strike, which occurred while Plaintiff was standing on a third-story balcony, caused him to fall off the balcony and suffer serious injury. These allegations are such that Commander Brown should have been on notice that his failure to intervene violated clearly established law. Therefore, Defendants' motion for summary judgment is denied as to Plaintiff's Third Claim for Relief against Defendant Brown.

E.      ADA Claim

Defendants next contend that they are entitled to summary judgment as to Plaintiff's Fourth Claim for Relief for violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. In order to prove a violation of Title II of the ADA, a plaintiff must demonstrate that: (1) he or she is a qualified individual with a disability; (2) that he or she was either excluded from participation or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999).

In *Gohier v. Enright*, the Tenth Circuit held that a person with a disability can state a claim under the ADA based on police conduct in an arrest or investigation. *Gohier*, 186 F.3d at 1220-21.  In *Gohier*, the Tenth Circuit discussed two potentially viable theories involving police conduct recognized by other federal courts:  the wrongful-arrest theory and the reasonable-accommodation-during-arrest theory.   Under the wrongful-arrest theory, law enforcement may be liable for arresting an individual after incorrectly perceiving the effects of the individual's disability as illegal conduct.  *Id.* (citing *Lewis v. Truitt*, 960 F.Supp. 175, 178 (S.D. Ind. 1997) and *Jackson v. Town of Sanford*, 1994 WL 589617, at *6 (D.Me. Sept. 23, 2994)).  Under the reasonable-accommodation-during-arrest theory, law enforcement may be liable if they fail to reasonably accommodate a person with a disability during the course of an investigation or arrest for a crime unrelated to that disability, thereby "causing the person to suffer greater injury or indignity in that process than other arrestees."  *Id.* (citing *Gorman v. Bartch*, 152 F.3d 907, 912-13 (8th Cir. 1998)).  However, while the Tenth Court clarified in *Gohier* that "a broad rule categorically excluding arrests from the scope of Title II . . . is not the law," the court stated that it remained "an open question in this circuit whether to adopt either or both [theories]."  *Id.*

In *Gohier*, the Defendant officer responded to a request to investigate a disturbance involving a man using a baseball bat or pipe to damage vehicles.  *Id.* at 1217.  The officer subsequently encountered a man, later identified as a paranoid schizophrenic, walking down the middle of the road clutching his right hand to his chest.  *Id.*  The officer identified himself, and directed the man to "stop," at which time the man put his right hand behind his back and began walking towards the officer at a "fast

pace." *Id.* at 1217-18. The officer drew his pistol and ordered the man to show his hands several times, but the man did not comply and kept advancing towards the officer with his right hand hidden. *Id.* at 1218. The man then raised his right had from behind his back and began repeatedly swinging it down and forward in a stabbing motion, holding a long slender object. *Id.* The officer retreated behind his car and ordered the man to drop the object, but the man did not comply and continued to advance to the driver's side of the patrol car and began to open the door. *Id.* When the officer moved to stop the man, he let go of the door and either stepped or lunged toward the officer making a stabbing motion with the object. *Id.* The officer shot the man twice, killing him. *Id.*

The Tenth Circuit determined that the wrongful-arrest theory did not apply because the officer did not misperceive lawful conduct caused by the man's disability as criminal activity. *Id.* at 1221. The court noted that the man's activity was unlawful and that the officer used force in self-defense. *Id.* The court then noted that the man's estate might have alleged that Title II of the ADA required the defendant city "to better train its police officers to recognize reported disturbances that are likely to involve persons with mental disabilities, and to investigate and arrest such persons in a manner reasonably accommodating their disability." *Id.* However, because the plaintiff in *Gohier* disclaimed the reasonable-accommodation-during-arrest theory, the court declined to analyze the theory's application to the facts of that case. *Id.*

Citing *Gohier*, Plaintiff contends that Defendants are liable under both he wrongful-arrest theory and the reasonable-accommodation-during-arrest-theory. In response, Defendants maintain that even assuming that Plaintiff is a qualified individual

-18-

with a disability he cannot show that he was either (1) excluded from participating in or denied the benefits of any services, programs, or activities because of his disability, or (2) that he was otherwise subjected to discrimination because of his disability. *See Gohier*, 186 F.3d at 1219. According to Defendants, it is undisputed that Plaintiff was engaged in criminal behavior at the time the officers attempted to arrest him, and that even if the City had a duty to accommodate him, such an accommodation was inapplicable due to the exigent circumstances surrounding Plaintiff's arrest.

1.    <u>Wrongful Arrest Theory</u>

Under the wrongful arrest theory discussed in *Gohier*, law enforcement may be liable for arresting a disabled individual who has not committed a crime where law enforcement misperceive the effects of the individual's disability as illegal conduct. *Gohier*, 186 F.3d 1221. The police officers in the cases cited in the *Gohier* decision each misperceived the effects of a disability as illegal conduct. "In *Lewis*, [officers] beat and arrested, for the offense of resisting law enforcement, a deaf man who could not understand their command; in *Jackson*, [officers] arrested for drunk driving a man who was sober, and whose unsteadiness and slurred speech resulted from a past stroke." *See Id.* (citing *Lewis*, 960 F.Supp. at 176-77; *Jackson*, 1994 WL 589617, at *1).

Plaintiff has cited no cases, other than *Gohier* and the cases discussed therein, to support his contention that the wrongful arrest theory applies to the facts of this case. However, this case is distinguishable from the cases discussed in *Gohier* because in this case officers did not misperceive lawful conduct caused by Plaintiff's disability as criminal activity and then arrest him for that conduct. Here, it is undisputed that officers were dispatched to the scene of the incident to investigate a criminal mischief involving

Plaintiff. It is also undisputed that during the incident Plaintiff threw articles of personal property, including furniture, off his third floor balcony, broke all of the windows in the apartment and the glass door to the balcony, and failed to comply with officers' commands. Even assuming Plaintiff's conduct was the result of a disability, his conduct warranted a police response because his conduct was unlawful. For many of the same reasons the Tenth Circuit in *Gohier* rejected application of the wrongful arrest theory in that case, I find that theory inapplicable to the facts of this case. Therefore, even if the wrongful arrest theory were applicable in this Circuit, such a claim is not cognizable in this case.

2.    Reasonable-Accommodation

I next address Plaintiff's contention that Defendants are liable under the reasonable-accommodation-during-arrest theory. As described in *Gohier*, under this theory, a plaintiff might assert that Title II required training for police officers to recognize reported disturbances that are likely to involve persons with mental disabilities, and to investigate and arrest such persons in a manner reasonably accommodating their disability. *See Gohier*, 186 F.3d at 1222. Here, Plaintiff alleges that he was subjected to discrimination in the form of excessive force, which could have been avoided had Defendants been properly trained to recognize and reasonably accommodate individuals exhibiting signs of "excited delirium," mental illness or disability.

Defendants contend that even if Lone Tree had a duty to accommodate Plaintiff under the ADA, this duty never came into affect during the incident, because Defendants actions were in immediate response to the circumstances at hand and their

efforts to secure the scene.  Defendants essentially contend that they have no duty to

accommodate an individual under the ADA in the face of exigent circumstances.  In

support of this contention, Defendant's rely on several cases from other Circuits,

including the Fifth Circuit Court of Appeals decision in *Hainze v. Richards*, 207 F.3d

795, 801 (5th Cir. 2000).  In *Hainze*, the Fifth Circuit held that the ADA does not apply to

an officer's on-the-street responses to reported disturbances, whether or not those calls

involve subjects with mental disabilities, prior to the officer's securing the scene and

ensuring that there is no threat to human life.  *Id*.

However, Plaintiff does not bring his ADA claim against the individual defendants,

but against the City of Lone Tree based on its alleged failure to make reasonable

modifications in policies, practices, or procedures in compliance with the ADA.  Plaintiff

notes that in a similar case, *Schorr v. Borough of Lemoyne*, 243 F.Supp.2d 232, 238

(M.D. Pa. 2003), the district court found as follows:

> The *Hainze* rationale for disallowing ADA claims when
> the challenged conduct occurred during 'exigent
> circumstances' does not apply here . . . Plaintiffs have not
> brought this action against any of the officers involved . . .
> and any exigent circumstances at the time of arrest are
> therefore irrelevant.  Rather, Plaintiffs have brought their
> ADA claim against the Commission for failing to properly
> train those officers, resulting in the death of [Plaintiff].  The
> alleged non-compliance with the training requirements of the
> ADA did not occur the day that the officers shot [Plaintiff]; it
> occurred well before that day, when the Defendant
> policymakers failed to institute policies to accommodate
> disabled individuals such as [Plaintiff[ by giving the officers
> the tools and resources to handle the situation peacefully.

*Schorr*, 243 F.Supp.2d at 238.  I find the reasoning in *Schorr* persuasive and find that

the exception identified in *Hainze* and other cases for officers facing exigent

circumstances does not apply to the ADA claim as it is alleged in this case. Here, Defendant Lone Tree admits that it does not have a specific policy directed to the handling of mentally impaired individuals, and states that it relies on its general non-discrimination policy. Therefore, I find that Plaintiff may go forward with its ADA claim based on his allegations that Lone Tree should have adopted polices to accommodate disabled individuals such as Plaintiff, and should have properly trained its officers to recognize and reasonably accommodate individuals exhibiting signs of "excited delirium," mental illness or disability. Therefore, I find that summary judgment is inappropriate as to Plaintiff's Fourth Claim for Relief against Defendant Lone Tree for violation of Title II of the ADA.

F.      Rehabilitation Act Claim

Finally, Defendants contend that Plaintiff's claim for violation of the Rehabilitation Act, 29 U.S.C. § 794(a), must be dismissed as a matter of law because the City of Lone Tree did not receive federal financial assistance as of January 19, 2006. Plaintiff indicates in his response that since filing the Amended Complaint, Defendant Lone Tree has come forward with an affidavit stating that it has received no federal financial assistance as of the date of the incident, and concedes that summary judgment should enter on this claim. Therefore, I find that summary judgment shall enter in favor of Defendant City of Lone Tree on Plaintiff's Fifth Claim for Relief for violation of § 504 of the Rehabilitation Act of 1973.

III.    Conclusion

Therefore, for the reasons set forth herein, it is hereby

ORDERED that Defendants' Combined Motion and Memorandum Brief in

Support of Partial Summary Judgment, filed October 16, 2009, ECF No. 53, is

**GRANTED IN PART AND DENIED IN PART** as set forth here.

    Dated:  September 30, 2010

                                        BY THE COURT:


                                        s/ Wiley Y. Daniel_____
                                        Wiley Y. Daniel
                                        Chief United States District Judge